**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------X

In Re:                                                                                Chapter 11

DOTS, LLC, *et al.*,                                                          Case No. 14-11016 (MBK)

                                   Debtors.
----------------------------------------------------------X
DOTS, LLC, *et al.*,                                                          Adv. Pro. No. 14-1816 (MBK)

                                   Plaintiffs,

v.

CAPSTONE MEDIA,

                                   Defendant.
----------------------------------------------------------X
APPEARANCES:

Joao F. Magalhaes, Esq.
Trenk, DiPasquale, Della Fera & Sodono, P.C.
347 Mount Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
*Special Counsel for Debtors*

Jami B. Nimeroff, Esq.
Brown Wynn McGarry Nimeroff LLC
Two Commerce Square, Suite 3420
2001 Market Street
Philadelphia, Pennsylvania 19103
*Counsel for Capstone Media*

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

## I. Introduction

This matter comes before the Court upon the motion ("Motion") of Defendant Capstone Media[1] ("Capstone") seeking summary judgment on all counts contained in Debtors'/Plaintiffs' (hereinafter "Debtors") adversary complaint ("Complaint"). By the Complaint, Debtors seek to (i) recover certain alleged preferential transfers, approximating $872,425, pursuant to 11 U.S.C. §§ 547 and 550; (ii) disallow any claims asserted by Capstone against the Debtors pursuant to 11 U.S.C. § 502; and (iii) recoup attorneys' fees under Federal Rule of Bankruptcy Procedure 7008(b).

The crux of the dispute centers on whether payments made by the Debtors to Capstone were in fact on account of antecedent debts. Absent the Debtors' satisfaction of this prong of its *prima facie* preference case, Debtors' suit cannot be successful. The Court has received and reviewed the parties' submissions and entertained oral argument on June 11, 2015. For the reasons expressed below, the Court finds that the payments/transfers at issue were <u>not</u> tendered on account of antecedent debts and, therefore, will grant summary judgment in favor of Capstone.

## II. Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is

---

[1] Defendant is also known as Media Planning and Buying Services, Inc., d/b/a Capstone Media.

a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(B) and (F). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

Additionally, the Court may enter a final judgment with respect to the within Motion without contravening the United States Supreme Court's ruling in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). "Because preference actions 'stem from the bankruptcy itself and are decided primarily pursuant to [a bankruptcy court's] *in rem* jurisdiction,' bankruptcy courts have constitutional authority to enter a final judgment in an adversary proceeding involving preferential transfer claims." *Williams v. Mckesson Corp. (In re Quality Infusion Care, Inc.)*, 2013 Bankr. LEXIS 5044, 8-9 (Bankr. S.D. Tex. Nov. 25, 2013), citing *Post-Confirmation Comm. v. Tomball Forest, Ltd. (In re Bison Bldg. Holdings, Inc.)*, 473 B.R. 168, 172 (Bankr. S.D. Tex. 2012). Accordingly, for these reasons, the Court's issuance of an order granting Capstone's Motion does not implicate *Stern*.

**III.     Procedural Background**

On January 20, 2014 ("Petition Date"), Debtors filed a voluntary Chapter 11 bankruptcy petition. Several months later, on August 26, 2014, Debtors filed a Motion for Entry of an Order Establishing Procedures Governing Adversary Proceedings Commenced Pursuant to 28 U.S.C. §§ 547 and 550 of the Bankruptcy Code ("Procedures Motion"). *See* Main Case Docket No. 769. On September 18, 2014, the Court entered an order ("Procedures Order") granting the Procedures Motion and adopted the proposed procedures for handling preference litigation contained therein. *See* Main Case Docket No. 824. Since the entry of the Procedures Order, Special Counsel to the Debtors has filed approximately 200 adversary proceedings most of which, if not all, relate to preference litigation. Among other requirements, the Procedures Order

compels the parties in each adversary proceeding to enter into mediation in an attempt to settle the underlying disputes. Further to the Procedures Order, if a resolution cannot be reached through mediation then the parties are to proceed to trial.

On October 1, 2014, Debtors instituted the within Complaint against Capstone. On January 5, 2015, Capstone filed an answer to the Complaint and, on January 20, 2015, filed a motion seeking relief from the mediation requirements set forth in the Procedures Order. *See* Adv. Pro. Docket Nos. 10 and 13. On March 9, 2015, the Court granted Capstone's request for relief from the mediation requirements and relisted the matter on a trial track. *See* Adv. Pro. Docket No. 18. Shortly thereafter, on April 2, 2015, Capstone filed the within Motion seeking summary judgment on all counts contained in Debtors' Complaint. *See* Adv. Pro. Docket No. 20.

**IV.    Factual Background**

Although Debtors' counsel does a commendable job in arguing that the elements of Debtors' preference claim have been met, the Court respectfully disagrees and finds that Debtors have not met the requisite burden of proof. The following facts are undisputed:

- Debtors are collective retailers of fashionable clothing, accessories, and footwear for price-conscious women.
- Capstone is a small, "mom and pop" company located in Ohio that provides market research, media planning, media buying, promotional services, radio advertising, and social media series (collectively "Media Services").
- Given Capstone's specialization in providing Media Services, Debtors sought out Capstone's services with respect to certain of its sales programs.
- Specifically, in August 2013, Capstone was retained by Debtors to perform certain Media Services in connection with a certain test program in Cleveland.
- Upon Debtors' retention of Capstone, the parties entered into a Master Services Agreement in or about August 16, 2013.

- Shortly thereafter, Debtors approached Capstone with plans for its 2013 Holiday Program, which included services to be provided in Detroit, Milwaukee, San Antonio and Miami-Ft. Lauderdale, and eventually Chicago, Philadelphia, New York, Boston, and Providence. All such services were to follow the constructs of the Master Services Agreement.

- While the Master Services Agreement is important to and governs the parties' general business relationship, a pre-approved Statement of Work ("SOW") is what defines a particular project, including the costs and payment structure relative thereto.

- As alleged by the Debtors, the transfers (hereinafter "Transfers") at issue were comprised of approximately six (6) payments, some of which were lump-sum payments for multiple invoices that were each governed by a SOW. The payments, as they relate to Capstone's invoices, can be broken down as follows:

| SOW Dates | Invoice #s | Invoice Amounts | Service | Total Transfers | Transfer Dates |
|---|---|---|---|---|---|
| 10/11/2013 | 7076<br>7077<br>7078 | $10,300<br>$270,100<br>$270,100 | Media Planning<br>Media Buying/Placement<br>Media Buying/Placement | Unknown<br>$270,100<br>$270,100 | Unknown<br>10/23/2013<br>11/13/2013 |
| 10/14/2013 | 7085<br>7086<br>7087 | $1,500<br>$61,000<br>$61,000 | Media Planning<br>Media Buying/Placement<br>Media Buying/Placement | Unknown<br>$61,000<br>$61,000 | Unknown<br>10/23/2013<br>11/13/2013 |
| 10/28/2013 | 7135<br>7136<br>7137 | $2,575<br>$40,500<br>$40,500 | Media Planning<br>Media Buying/Placement<br>Media Buying/Placement | $2,575<br>$40,500<br>$40,500 | 11/01/2013<br>11/12/2013<br>11/26/2013 |
| 11/09/2013 | 7150<br>7150 | $2,250<br>$124,400 | Media Planning<br>Media Buying/Placement | $2,250<br>$124,400 | 11/14/2013<br>11/14/2013 |
| **TOTAL INVOICED** | | **$884,225** | | | |
| **TOTAL PAID[2]** | | | | **$872,425** | |

---

[2] The Debtors do not account for or seek to recover payments relating to Media Planning services invoiced under Invoice Nos. 7076 ($10,300) and 7085 ($1,500), which the Court has marked as "Unknown". The total amount paid, therefore, reflects the "TOTAL INVOICED" ($884,225) less $11,800 for a "TOTAL PAID" of $872,425.

5

*See* Adv. Pro. Docket No. 22, Debtors' Opposition, p. 6.

It is clear that the bulk of the Transfers relate to Media Buying/Placement services and only a small portion of the total amount transferred relate to Media Planning. In fact, the Debtors seek only to recover Media Planning Transfers totaling $4,825, with the overwhelming majority of Transfers relating to Media Buying/Placement, totaling $867,600 ($872,425 less $4,825). Accordingly, the Court will focus on the mechanics of payment and services vis-à-vis the Master Services Agreement and the SOWs as they relate to Media Buying/Placement and antecedent debt.[3]

### V.     Legal Analysis

#### A.     Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] As the Supreme Court has indicated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citing Fed.

---

[3] Indeed, the Court is cognizant that with regard to the Transfers relating to Media Planning, Debtors could bring suit against Capstone only in the district court for which Capstone resides (Ohio), as the payments relating to such Transfers are close to one-third of the $12,475 threshold amount in controversy prescribed by 11 U.S.C. § 1409(b).

[4] Federal Rule of Civil Procedure 56 was amended as of December 1, 2010. As noted by the court in *Guiliano v. Coy (In re Coy)*:

> Subdivision (a) now contains the summary judgment standard previously stated in subdivision (c). Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").

2011 WL 3667607, *6-7 (Bankr. D. Del. Aug. 22, 2011).

R. Civ. P. 1). In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001) (*citing Celotex Corp.*, 477 U.S. at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Disputed material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute is genuine when it is "triable," that is, when reasonable minds could disagree on the result. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

Once the moving party establishes the absence of a genuine dispute of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial"). *See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982); *Olympic Junior, Inc. v. David Crystal, Inc.*, 463

F.2d 1141, 1146 (3d Cir. 1972). If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. *Liberty Lobby, Inc., supra*, 477 U.S. at 249-250. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

### B.    Preference Liability

Under 11 U.S.C. § 547, a trustee or the debtor-in-possession can dismantle select transactions between a debtor and its creditors that occurred within the ninety (90) days [or a year if the creditor is an "insider"] immediately preceding the bankruptcy filing. *Barnhill v. Johnson*, 503 U.S. 393, 394 (U.S. 1992); *see also* 11 U.S.C. § 110; *see also Rzasa-Ormes v. Arturi, D'Argenio, Guaglardi & Meliti, LLP*, 2010 Bankr. LEXIS 3747, 9-11 (Bankr. D.N.J. Oct. 25, 2010). If the bankruptcy court declares that an avoidable preference has occurred, the creditor must forfeit its improved position and must return any preferential transfers it received. *Johnson*, 503 U.S. at 394. Section 547(b) explains the elements of a preferential transfer:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property . . .
>
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made . . .
>     (A) on or within 90 days before the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if . . .
>     (A) the case were a case under Chapter 7 of this title

> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Section 547's avoidance power aims "to foster equality of treatment among creditors and to discourage creditors from incapacitating a firm by racing to attach its assets shortly before bankruptcy." *Pineview Care Ctr. v. Mappa (In re Pineview Care Ctr.)*, 152 B.R. 703, 705 (D.N.J. 1993); *see also MR Wind Down Co. v. Rock-Tenn Converting Co. (In re Markson Rosenthal & Co.)*, 2009 Bankr. LEXIS 3901 (Bankr. D.N.J. Oct. 27, 2009). In a preference action, § 547(b) places the burden of proof on the trustee or the debtor-in-possession to establish the avoidability of a transfer by a preponderance of the evidence. *See* 11 U.S.C. § 547(g). Moreover, the trustee or debtor-in-possession must overcome any defenses a transferee may have pursuant to 11 U.S.C. § 547(c).

It is undisputed that each Transfer was paid in connection with an invoice issued by Capstone to Debtors, and that each Transfer occurred within 90 days of the Petition Date.[5] Thus, assuming that the Transfers were made while Debtors were insolvent, and that Capstone received more than other creditors would receive in a Chapter 7 liquidation scenario, the critical issue before the Court is whether the Transfers were made to Capstone, as a creditor, on account of an antecedent debt.

Even after giving Debtors the benefit of the doubt that Capstone received payments as a creditor at the time of the Transfers, the Court nonetheless must find that the Transfers were not made on account of an antecedent debt. Although "antecedent debt" is not defined in the

---

[5] The relevant preference period is the 90 days between October 22, 2013 and the Petition Date (January 20, 2014).

Bankruptcy Code, the Court regards the analysis in *Maxwell v. Penn Media (In re marchFirst, Inc.)* to be instructive:

> The Bankruptcy Code does not define the term "antecedent debt" as such. But "debt" is defined as "liability on a claim," 11 U.S.C. § 101(12), and "claim" means any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). "Antecedent," in turn, is generally defined as "existing or occurring before in time or order often with consequential effects." Webster's Third New International Dictionary 91 (1981); *see also* American Heritage Dictionary 77 (3d ed. 1996) (defining "antecedent" as "[g]oing before; preceding.").
>
> A debt is "antecedent" for purposes of section 547(b), then, "if it was incurred before the allegedly preferential transfer." *Peltz v. Edward C. Vancil, Inc. (In re Bridge Info. Sys., Inc.)*, 474 F.3d 1063, 1066-67 (8th Cir. 2007) (internal quotation omitted); 5 Collier on Bankruptcy ¶ 547.03[4] at 547-33 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010) (noting that "the debt must have preceded the transfer"). **And a debt is incurred when the debtor becomes legally obligated to pay.** *Bridge Info. Sys.*, 474 F.3d at 1067; *Southmark Corp. v. Marley (In re Southmark Corp.)*, 62 F.3d 104, 106 (5th Cir. 1995); *Sullivan v. Willock (In re Wey)*, 854 F.2d 196, 200 (7th Cir. 1988); *Peltz v. New Age Consulting Servs.*, Inc., 279 B.R. 99, 102 (Bankr. D. Del. 2002). **The question of antecedence, in other words, is "purely a matter of timing."** *Minchella v. Beaver (In re Beaver)*, Nos. 88 B 2075, 88 A 599, 1989 Bankr. LEXIS 1203, 1989 WL 85384, at *3 (Bankr. N.D. Ill. July 29, 1989).

2010 Bankr. LEXIS 3480, 22-23 (Bankr. N.D. Ill. Oct. 14, 2010) (emphasis added). Furthermore, and directly applicable to the instant case, it has been held that "[a]n invoice estimating the cost of services to be provided in the future does not create a debt…," and that "[t]he debt arises when the debtor receives the goods or services and is then legally bound to pay, not when the creditor chooses to invoice the debtor for the work or services." *Vanguard Airlines, Inc. v. Airline Automation, Inc. (In re Vanguard Airlines, Inc.)*, 295 B.R. 329, 334-335 (Bankr.

W.D. Mo. 2003); *see also PN Chapter 11 Estate Liquidating Trust v. Inserts East, Inc. (In re Phila. Newspapers, LLC)*, 468 B.R. 712, 722-723 (Bankr. E.D. Pa. 2012) (highlighting the significance of the term "prepay" when included in invoices).

As previously noted, the parties' business relationship was generally governed by a Master Services Agreement, while separate SOWs governed specific projects and set forth the details with respect to services and payment. In that regard, the Court pays particular attention to the following provisions of both the Master Services Agreement, as well as a sample SOW as provided by the Debtors:

- **Master Services Agreement:**

    o "**This Agreement and any active approved Statement of Work ("SOW") shall govern the relationship in its entirety** and for the duration of all services performed by Agency [Capstone Media] on behalf of Client [Dots, LLC] and can only be superseded by mutual written agreement between both parties."

    o "AGENCY COMPENSATION: **Amounts for compensation shall be noted in individual SOW** submitted per project subject to approval by Client."

    o "PROJECT DEFINITION: **Agency shall submit an SOW for each media project for Client approval before work is begun. Work will not begin on each project until approval is received."**

    o "MEDIA PLANNING & BUYING – CLIENT'S AUTHORIZATION: **For any approved SOW for media planning and buying services Client hereby authorized Agency (Capstone Media) to purchase advertising time and space on behalf of Client in such amounts as specified in the application SOW**…"

    o "CANCELLATION OF MEDIA SCHEDULES: …Should Client endeavor to cancel any media schedules before completion date of such media schedules, Agency shall be compensated for 100% of commissions on all such media that has run or that is required to be run by media due to its cancellation terms. For cancelled media that does not run, 75% of total cancelled media commissions shall be due to and retained by Agency…"

11

*See* Adv. Pro. Docket No. 22, Debtors' Opposition, Exhibit 1 – Master Services Agreement (emphasis added).

- **Statement of Work:**

  - "**This Statement of Work (SOW) is intended to define the scope of work to be completed by Capstone Media including fees for services performed, media placement costs, associated expenses and payment terms.** The terms and conditions of the Master Services Agreement dated August 16, 2013, between Dots, LLC ("DOTS") and Capstone Media ("Capstone Media") are hereby incorporated by reference."

  - "Cost of Services: All costs are determined based on the preliminary work scope as presented in this document. Additional workload not included in this SOW will be quoted in a separate SOW."

  - "*Media Planning Services …Timing:* **Work will commence upon approval of summary, budget & first payment.** Completion of media plan requires 10 business days from date of signature."

  - "*Media Buying Services …Timing*: Due to tightness of media avails, buying will be conducted concurrent to planning process. Media Buy summaries will be presented by October 30, 2013; **pre-payment and approvals are required for finalized media negotiations for placements and preparation of contracts with selected media vendors…**"

  - Billing Schedule:
    - Media Planning & Arbitron Ratings: **Due upon receipt**, Invoice #7076, $10,300 Net
    - Media Buying & Placements: Two equal invoices of $270,100 each; Total $540,200. Invoice #7077, due October 24, 2013; Invoice #7078 due November 14, 2013.

*See* Adv. Pro. Docket No. 22, Debtors' Opposition, Exhibit 2 – Statement of Work date October 11, 2013 (emphasis added).

In light of the foregoing, it is evident that Capstone would not carry out its Media Buying/Placement services on Debtors' behalf until such services had pre-planned approval and were paid in advance. Indeed, Capstone could not make media buys unless it had the funds to do

12

so based on the pre-approved budget sanctioned by the Debtors. It follows, therefore, that Capstone was not entitled to compensation until the agreed upon services under each SOW were performed.

Moreover, although the Master Services Agreement generally governed the parties' relationship, it is the SOWs that specify the terms of each deal. Thus, the Court cannot accept Debtors' argument that an antecedent debt was created pursuant to the Master Services Agreement when in fact the SOWs were the critical agreements which dictated the terms of each deal. Nor does the Court accept the premise that the date of the invoices served as the creation of a debt. As set forth in *Vanguard*, *supra*, "[t]he debt arises when the debtor receives the goods or services and is then legally bound to pay, not when the creditor chooses to invoice the debtor for the work or services." 295 B.R. 329, 334-335.

The Court also notes the significance of the term "pre-payment" as it appears in the SOWs with respect to Media Buying/Placement services. Indeed, in *PN Chapter 11 Estate Liquidating Trust v. Inserts East, Inc. (In re Phila. Newspapers, LLC)*, 468 B.R. 712, 722-723 (Bankr. E.D. Pa. 2012), *supra*, the Bankruptcy Court for the Eastern District of Pennsylvania highlighted the importance of the term "prepay". There, the defendant, in attempting to defend against the trustee's preference claim, argued that certain invoices with the term "Due on receipt" actually contemplated pre-payment and, therefore, the transfers at issue could not be on account of antecedent debts. *Id.* The court disagreed, noting that "the Defendant did issue [other] invoices which required prepayments and when it did so, the terms on the invoices were stated, in capital letters, as 'PREPAY'"…and that such invoices "stand in stark contrast to the terms on [the invoices at issue] which are 'Due on receipt.'" *Id.*

13

In this case, although the invoices sent by Capstone do in fact include the term "Due on receipt," the same invoices also <u>expressly</u> <u>include</u> the term "pre-payment," which buttresses the parties' true intent with respect to the order of payment then services. As set forth above, it is evident from the course of dealings between the parties that the majority of work to be performed by Capstone would only be performed upon pre-payment by the Debtors. Indeed, Capstone could not perform Media Buying/Placement services unless it was in a pre-paid position.

### VI.    Conclusion

For the reasons expressed above, the Court finds that that the Transfers were <u>not</u> tendered on account of antecedent debts and, therefore, will grant summary judgment in favor of Capstone.[6] Counsel for Capstone is directed to submit a form of Order consistent with the Court's ruling.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: July 16, 2015

---

[6] In light of the Court's ruling, Debtors' claims with respect to 11 U.S.C. § 502 and Federal Rule of Bankruptcy Procedure 7008(b) cannot be sustained. Additionally, while Capstone has raised certain defenses to the within preference litigation, including "new value" and "ordinary course," the Court need not examine those defenses based on its ruling.